# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

DIANNA SALTER, as Surviving )
Spouse of Ricky P. Salter, Sr., )
Deceased, and in Her Capacity as the )
Temporary Administrator of the )
Estate of Ricky P. Salter, Sr., )
)
    Plaintiff, )
)
v. ) CV416-254
)
OTIS ELEVATOR CO., JOHN DOES )
1-2, )
)
    Defendants. )

## **ORDER**

On August 31, 2014, decedent Ricky Salter was tragically killed when the elevator he was working on (Lowerator No. 4) began ascending and trapped him between the platform and shaft housing. His legs and right arm were amputated, and he died prior to the arrival of paramedics. Plaintiff Dianna Salter contends defendant Otis Elevator Company either negligently maintained Lowerator No. 4 or failed to warn others of a dangerous condition in Lowerator No. 4, thus causing her late husband's death. Otis Elevator argues that Salter was negligent himself, as he walked out onto the platform of Lowerator No. 4 without locking out or de-energizing the equipment. Docs. 40 & 44.

Plaintiff seeks to compel the production of the Otis Employee Safety Handbook, which "prescribes the responsibility or responsibilities of the Mechanic or Journeyman to identify and eliminate any unsafe conditions that are under the control of the Company, and notify others to correct such unsafe conditions." Doc. 40-1, Exh. 7 No. 13 (Plaintiff's First Requests for Production of Documents). Defendant opposes, contending the request is overly broad, vague, and ambiguous, seeks propriety/confidential information, and is irrelevant to the case because it doesn't involve either "Otis employee safety" or "an unsafe condition under the control of Otis." *Id.* (Defendant's Amended Response).

Clearly, the request for a single, specific document is not "overly broad, vague, or ambiguous." Defendant does not meaningfully dispute that it knows precisely the document plaintiff seeks. *See* doc. 44. Nor does it dispute that there is already a comprehensive Protective Order in place to shield any proprietary information contained in the Handbook. *See id.*; *see also* doc. 18 (Protective Order).

Rather, Otis hangs its hat on the irrelevance of the Handbook to Ricky's death, since he was not an Otis employee and no Otis employee

was present during the accident. Doc. 44 at 7. But plaintiff's theory is that Otis was negligent in its repairs to the elevator and that that negligence led to her husband's death. She contends that, even if Otis did not regularly maintain the elevator, at some point six months prior to the accident it *did* service Lowerator No. 4, failed to catch a flaw within the I-3 pressure relief valve on Lowerator No. 4, or did catch it and failed to inform the normal maintenance crew that the condition existed, and that one of these failures led to Ricky's death. Doc. 40; *see also* doc. 13 (Amended Complaint). She has been advised that the Handbook has a provision requiring employees out on a service call to report any dangerous condition they come across to the responsible party (here, International Paper, the owner and regular maintainer of Lowerator No. 4). *See* doc. 26 (plaintiff's expert witness report, opining that Otis negligently and recklessly failed to adjust the I-3 pressure relief valve, which would have prevented the accident, and failed to warn International Paper of the dangers associated with it); doc. 40, Exh. 6 at 11 (excerpts from an allegedly similar manual, which directs elevator mechanics to "notify" a responsible party, such as the building owner, that "unsafe conditions exist" "verbally and/or in writing.").

3

Just because defendant disagrees with her theory -- that Otis was either negligent in its maintenance or noticed the problem but failed to warn Lowerator No. 4's owner per its own policy -- doesn't make a copy of the Handbook (allegedly) setting forth that policy irrelevant. Nor does the fact the Handbook is specifically geared to Otis employees' safety practices make it irrelevant to plaintiff's theory that the accident was *caused* by Otis employees' negligent safety practices. *See* doc. 44 at 9 (arguing that plaintiff's relevance argument is "simply based on speculation and suspicion in an attempt to show that the Handbook creates a duty to Mr. Salter with regard to the incident, even in the face of undisputed testimony that the Handbook pertains only to Otis employee workplace safety"). Indeed, defendant has adduced a good deal of evidence that it was not contracted to repair or monitor the I-3 pressure relief valve or perform work on the Lowerator gate, and thus could not be held liable for Ricky's death. *See* doc. 44, Exh. C. That will be valuable when Otis presents its defense to the jury; it does not render the Handbook itself irrelevant.

Relevant evidence is discoverable, and defendant has not demonstrated the Handbook is irrelevant to plaintiff's negligence theory

or that production would be unduly burdensome. *See* Fed. R. Civ. P. 26(b)(1).[1] Defendant's objections to plaintiff's motion are without merit, and Plaintiff's motion to compel the production of the Otis Employee Safety Handbook (doc. 40) is **GRANTED**.

**SO ORDERED,** this  5th  day of October, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[1] "Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *Daniel Def. v. Remington Arms Co., LLC*, 2015 WL 6142883 at * 2 (S.D. Ga. Oct. 19, 2015) (quotes and cites omitted). Further, "[t]he standard for what constitute relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002); *McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) ("Rule 26, quite simply sets forth a *very* low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it.").